UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
SECURITIES AND EXCHANGE COMMISSION  )
                                    )
        Plaintiff,                  )
                                    )    C.A. No. 05 CV 10074 MEL
    v.                              )
                                    )
PATRICIA B. ROCKLAGE, WILLIAM M.    )
BEAVER, and DAVID G. JONES          )
                                    )
        Defendants.                 )
_____ )

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT DAVID G. JONES'
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Defendant David G. Jones ("Jones") files this memorandum in support of his motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint of Plaintiff Securities and Exchange Commission (the "Commission" or "SEC").

**I.      INTRODUCTION**

The Commission alleges that Jones engaged in insider trading in the stock of Cubist Pharmaceuticals, Inc. ("Cubist") after receiving a tip from his neighbor, William Beaver ("Beaver"), who in turn had allegedly received a tip from his sister, Patricia Rocklage ("Rocklage), the wife of the then CEO and Chairman of Cubist.

The Commission's complaint against Rocklage, the alleged tipper, fails as a matter of law because there can be no liability for insider trading under the securities laws when – as the Commission acknowledges in its Complaint – the alleged tipper has disclosed to the source her intention to use the information. *U.S. v. O'Hagan*, 521 U.S. 642, 655 (1997). Here, the Commission's Complaint concedes that Rocklage told her husband she intended to disclose to

her brother the information he had provided to her. The SEC's claims against Jones, in turn, fail because the liability of an alleged tippee such as Jones is derivative of the liability of the alleged tipper. Because Rocklage cannot be liable for securities fraud under the Supreme Court's decision in *O'Hagan,* Jones necessarily cannot be liable either. *Dirks v. SEC*, 463 U.S. 646, 655-665 (1983).[1]

Even if the Commission could state a claim against Rocklage, its claims against Jones would still be legally insufficient because the Complaint fails to allege fraud with the particularity required by Federal Rule of Civil Procedure 9(b). The Commission's allegations of fraud against Jones are limited to the allegation that he was friendly with Rocklage's brother, Beaver, that Beaver somehow tipped Jones, and that Jones thereafter sold his Cubist shares. The Complaint provides no particularity as to the tip itself, and it lacks such basic information as how the tip was supposedly made (by phone, meeting, or some other communication), precisely when the tip occurred, the circumstances surrounding the tip, and – other than the trade itself – conduct by Jones from which the possession of material non-public information could be inferred. Because the bare-boned allegations regarding Jones are insufficient under Rule 9(b), the claims against him should be dismissed.

---

[1]    *O'Hagan* involved the "misappropriation" theory of insider trading, which centers on outsiders to the company whose securities are at issue. *O'Hagan*, 521 U.S. at 652. The Supreme Court limited the theory to instances in which a person with a fiduciary relationship to the company comes into possession of material, nonpublic information and "misappropriates" that information through self-serving use, without disclosure to the principal. *Id.* The Commission also appears to allege, in the alternative, that the "classical" theory of insider trading applies to Rocklage. The "classical" theory in general involves trading by an insider of the company whose shares are at issue and may in limited circumstances be applied to an outsider if she attains the status of a "temporary insider," or if she has a derivative duty to abstain from trading after receiving information from an insider whose disclosure was improper. *Dirks*, 463 U.S. at 657-660. The factual allegations in the Complaint reveal that Rocklage did not have a professional relationship of any kind with Cubist – and therefore could not be a temporary insider – and that the disclosure made to her by her husband – who has not been named as a defendant – was not improper and in fact was consistent with previous disclosures he had made to her.

## II. FACTUAL ALLEGATIONS[2]

### A. Cubist and the relevant parties

Cubist is a biotechnology company based in Lexington, Massachusetts. (Complaint ¶ 9.) In 2001, the company was conducting clinical trials for a new drug called Cidecin. (*Id*. ¶ 10.) On or about December 28, 2001, company officials learned that the clinical trial results for Cidecin were negative. (*Id*. ¶ 11.)

Rocklage is married to Dr. Scott Rocklage ("Dr. Rocklage"), who was the Chairman and CEO of Cubist during all relevant time periods. (Complaint ¶¶ 1, 6.) Rocklage lives in Sudbury, Massachusetts, and she is the sister of Beaver. (*Id.*)

Beaver lives in Charlotte, North Carolina. (Complaint ¶ 7.) Jones lives in the same neighborhood as Beaver; they grew up together, went to the same college, and they are now neighbors and friends. (*Id.* ¶ 8.) Prior to January 2, 2002, both Beaver and Jones owned stock in Cubist. (*Id*. ¶¶ 1, 20-22.) According to the Complaint, Rocklage had an understanding with her brother that she would give him "a wink and a nod" if she ever learned of bad news concerning Cubist (*Id*. ¶ 15.)

### B. Communications between Rocklage and her husband

The Commission alleges that Dr. Rocklage spoke by telephone with his wife on the afternoon of December 31, 2001 as she was being driven home from the airport. (Complaint ¶ 12.) He told her the Cidecin clinical trial had failed, and that she should not talk about the results in front of the driver. (*Id*. ¶¶ 12, 14.) The Commission avers that Dr. Rocklage had a reasonable expectation that his wife would keep the information confidential, and that he had communicated confidential information to her in the past, which she had kept confidential. (*Id*. ¶¶ 12-14.)

---

[2] While Jones denies many of the allegations in the Complaint relating to him, he accepts them for the limited purposes of this motion. *Langadino v. American Airlines, Inc.,* 199 F.3d 68, 69 (1st Cir. 2000).

3

During a more in-depth discussion later in the evening, however, Rocklage told her husband that she intended to signal her brother to sell his Cubist stock. (*Id*. ¶16.) Dr. Rocklage urged her not to and made it clear he would be unhappy with her if she did so. (*Id.*) Rocklage nonetheless stated that she was going to tell her brother the results of the Cidicin trial. (*Id.*)

      C.      **Rocklage's call to her brother**

According to the Complaint, Rocklage telephoned her brother no later than the morning of January 2, 2002, and induced him to sell his stock by saying, in substance, "as far as Cubist is concerned, I'm giving a wink and a nod." (Complaint ¶ 17.) The Commission alleges that Beaver understood his sister to be giving him a warning about negative information concerning Cubist. (*Id*. ¶ 18.) Beaver sold his remaining stock in Cubist on the morning of January 2, 2002. (*Id*. ¶ 19.)

      D.      **The allegations regarding Jones**

As noted above, the Commission alleges that Beaver and Jones are friends who live in the same neighborhood. (Complaint ¶ 8.) The Complaint further alleges that at some time after Beaver received the alleged tip from his sister he conveyed that tip to Jones. (*Id. ¶ 20.*) In making the alleged tip, "Beaver was providing a gift of confidential information to a close friend and thereby intended to benefit personally from the disclosure." *(Id.)* According to the Complaint, upon receiving the information from Beaver, "Jones knew or had reason to know it was being conveyed to him as a result of a breach of trust owed to Scott Rocklage and/or Cubist and its shareholders." (Complaint ¶ 27.) The Commission alleges that, after receiving the tip, Jones sold all of his Cubist shares on January 3, 2002. (Complaint ¶¶ 20-22.)

4

**III.   ARGUMENT**

    **A.   The standard applicable to motions to dismiss**

Pursuant to Fed. R. Civ. P. 12(b)(6), a Court should dismiss a complaint if it fails to state a claim upon which relief can be granted. While it is true that when considering a motion to dismiss the Court extends all reasonable inferences in favor of the plaintiff, a complaint should nonetheless be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle it to relief." *Roeder v. Alpha Indus., Inc.,* 814 F.2d 22, 25 (1st Cir. 1987), quoting, *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). Further, a court need not "accept every allegation made by the complainant, no matter how conclusory or generalized." *United States v. AVX Corp.,* 962 F.2d 108, 115 (1st Cir. 1992).

    **B.   Jones, as the alleged tippee, cannot be liable for insider trading because Rocklage, the alleged tipper, cannot be liable under either the misappropriation or classical theory of insider trading liability**

Jones has reviewed and considered the arguments advanced by Rocklage in support of her motion to dismiss. Jones joins in those arguments and will not repeat them in detail here.

As set forth in the memorandum of law filed in support of Rocklage's motion to dismiss, Rocklage cannot be liable for insider trading under a misappropriation theory because the Supreme Court has held that the theory hinges on the feigned loyalty of a tipper, while Rocklage, in contrast, disclosed to Dr. Rocklage her intent to divulge to her brother the allegedly confidential information that had been communicated to her. In addition, Rocklage cannot be held liable under the classical theory of insider trading because Dr. Rocklage's disclosure to her was not improper and Rocklage was never an insider at Cubist.

It is well-settled that a tippee's liability is derivative of and dependent on the liability of the tipper. If the tipper is not liable for insider trading, the tippee cannot be liable either. *Dirks v.*

*SEC,* 463 U.S. 646, 659 (1983) ("[T]he tippee's duty to disclose or abstain [from trading] is derivative of that of the [tipper's] duty"); *United States v. Chestman,* 947 F.2d 551, 565 (2d Cir. 1991) (tippee's liability is secondary and "attaches only when an 'insider has breached his fiduciary duty to the shareholders by disclosing the information to the tippee and the tippee knows or should have known that there has been a breach'").

Here, there is no question that Jones is alleged to be a tippee and that the initial tipper is alleged to be Rocklage. Because the claims against Rocklage fail as a matter of law, the claims against Jones are also legally insufficient and must therefore be dismissed.

    **C.**    <u>**The complaint fails to allege fraud with sufficient particularity**</u>

Even if the Commission could state a claim against Rocklage as the alleged tipper, the claims asserted against Jones would still have to be dismissed because the SEC fails to plead its claims against Jones with particularity.

    a.  *The Rule 9(b) standard*

The Commission's insider claims against Jones rest on fraud. *See, e.g., Dirks v. SEC, 463 U.S. 646, 654 (1983).* The Complaint therefore must satisfy the more stringent pleading requirements of Federal Rule of Civil Procedure 9(b), which provides that "all averments of fraud . . . shall be stated with particularity." *Fed. R. Civ. P. 9(b); SEC v. Druffner*, 2005 WL 225585 (D. Mass. January 5, 2005). The First Circuit requires the plaintiff to allege the time, place and content of the fraudulent act with specificity. *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 193 (1st Cir. 1999). Other circuits have defined the parameters of Rule 9(b) as requiring an exposition of the "who, what, when, where and how" of the alleged fraud. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

### b. *The Complaint's generalized allegations regarding Jones*

The Commission's allegations regarding Jones lack the particularity required by Rule 9(b). The allegations are limited to the following general and conclusory averments:

- Beaver received an alleged tip from his sister Rocklage "[b]y no later than January 2, 2002" (Complaint ¶ 17);

- After receiving this alleged tip, "Beaver also tipped his close friend and neighbor, Jones, as to the negative news about Cubist and induced Jones to sell all the Cubist stock Jones owned" (Complaint ¶ 20);

- In tipping Jones, "Beaver was providing a gift of confidential information to a close friend and thereby intended to benefit personally from the disclosure" (*Id.*);

- Jones knew that Dr. Rocklage, Beaver's brother-in-law, was Cubist's chairman and CEO. (*Id. ¶ 21);

- "On the morning of January 3, 2002, after having communicated with Beaver about Cubist, Jones sold all 7,500 Cubist shares he owned for approximately $262,000" (*Id. ¶ 22);

- "When Beaver disclosed the material, nonpublic information regarding negative news about Cubist to Jones, Jones knew or was reckless in not knowing that this information was being conveyed to him as a result of a breach of a duty of trust and confidence owed to S. Rocklage and/or to Cubist and its shareholders." (*Id. ¶ 27).

The Complaint is devoid of any allegations regarding several of the factors about which Rule 9(b) requires particularity. To begin, while the Complaint alleges that Beaver told Jones of the "negative news about Cubist," it is silent on the specifics of what Beaver allegedly said to Jones. Second, the Complaint contains no allegations as to how Beaver supposedly delivered the news to Jones. The Complaint does not, for example, disclose whether the information was conveyed by telephone, in person, or by some other means. Third, the Complaint fails to allege precisely when the communication was supposedly made, and makes only the general allegation that it was sometime after Beaver learned of the information on January 2, 2002 and before Jones traded on January 3, 2002. Finally, there is no specificity to the allegation that "Jones knew or

7

was reckless in not knowing that [the information allegedly disclosed by Beaver] was being conveyed to him as a result of a breach of a duty of trust and confidence owed to S. Rocklage and/or to Cubist and its shareholders." (Complaint ¶ 27.) In particular, the Commission fails to allege that Jones knew where Beaver had obtained the information he allegedly conveyed to Jones, let alone whether he had obtained it from someone who had breached a duty of trust and confidence owed to Dr. Rocklage and/or Cubist.

The Commission's specific allegations concerning Jones are thus limited to the circumstantial facts of Jones's friendship with Beaver – the brother of the wife of the Cubist insider – and of the timing of Jones' sales of Cubists shares. To prevail on its claim, however, the SEC must show that Jones in fact received material, non-public information about Cubist stock from someone whom he knew to be an insider or misappropriating outsider, and that he sold his stock in light of that information. *See, e.g., Dirks v. SEC*, 463 U.S. 646, 655-665 (1983); *United States v. O'Hagan*, 521 U.S. 642, 652 (1997).

      **c.** ***The limited circumstantial evidence alleged in the complaint does not support a claim of insider trading against Jones***

It is true that the Commission can rely on circumstantial evidence in proving the elements of an insider claim, but the circumstantial evidence must be substantial, and cannot be based on guesswork or inference building. *SEC v. Drescher*, 1999 WL 946864, *3 (S.D.N.Y. 1999) ("A plaintiff cannot base a claim on speculation and conclusory allegations, but 'must allege facts that give rise to a strong inference of fraudulent intent.'") (quoting *Chill v. General Elec. Co.*, 101 F.3d 263, 267 (2d Cir. 1996)); *SEC v. Goldinger*, 1997 WL 21221, *3 (9th Cir. 1997) ("the SEC cannot merely provide circumstantial evidence to show the *possibility* of illegal trading.") (emphasis in original) (unpublished disposition).

The First Circuit discussed the type of circumstantial evidence which may give rise to a claim in *SEC v. Sargent*, 229 F.3d 68, 74-75 (1st Cir. 2000), a case in which the tippee had dinner with his business consultant and was told by the consultant about inside information. Although the testimonial evidence did not indicate that the consultant mentioned the specific name of the relevant company, the SEC alleged that the identity of this company was in fact relayed to the tippee during the dinner. *Id.* at 72. The Commission's evidence further indicated that, on the following day, the tippee purchased his largest investment ever in a single stock through his broker, even though the broker called the stock a "piece of crap." *Id.* 72-73. Further, the tippee even took out a $50,000.00 bank loan to finance the purchase. Here, the facts alleged in the Complaint against Jones – a friendship and a coincidental trade – are a far cry from the layers of circumstantial evidence discussed in *Sargent*.

The Commission's bare-boned allegations regarding Jones are the very type of speculative and inferential circumstantial evidence that courts have found unavailing as a matter of law. For example, in *Radiation Dynamics, Inc. v. Goldmuntz*, 464 F.2d 876 (2d Cir. 1972), the plaintiff contended that certain defendants were tippees of material inside information, either directly from corporate insiders or indirectly through a brokerage house. The inside information related to the merger of two large corporations. The plaintiff failed to produce direct evidence, however, that the alleged tippees received inside information, and its argument boiled down to the contention that the mere fact that the tippee purchased stock in a suspicious time frame, and knew people who had inside information, was sufficient circumstantial evidence. *Id*. at 886-887. Based on this evidence, the court held that the case "bottomed on nothing more than speculation and guesswork," and upheld a directed verdict in favor of the alleged tippees. *Id*.

9

In *SEC v. Truong*, 98 F. Supp.2d 1086, 1092 (N.D. Cal. 2000), the court held that there was an insufficient showing of contact between the employee-insider and his friend to support an insider trading claim against the friend. The court in *Truong* first found that the evidence was sufficient to prove that the employee-insider, Hahn, came in possession of material, non-public information on March 22, 1994. *Truong,* 98 F. Supp.2d at 1099. On this same date, the friend, Nguyen, sold 3,000 shares of stock in the company that Hahn worked for. *Id*. at 1094. The following day, March 23, 1994, Nguyen sold short 2,300 shares of the company's stock. *Id*. Telephone records for Nguyen's residential telephone indicated that on March 23, 1994 at 8:37 a.m., a call was made from Nguyen's telephone number to Hahn's extension at work. *Id.* The call was reflected on the billing statement as approximately 1 minute. *Id.* On March 24, 1994, Nguyen sold short 2,000 more shares of the company's stock. *Id.* In addition, Hahn provided Nguyen with a $15,000 check from his bank account on that day. *Id*.

In determining that there was insufficient evidence that Nguyen violated the securities laws, the court noted that the SEC had only pointed to "a single telephone call lasting between one and 60 seconds placed to Hahn's office the day after Nguyen sold his position in MDI and after Nguyen placed his first order to short sell the stock." *Id*. at 1102. The court then found that:

> The SEC has failed to provide an explanation as to how Hahn tipped Nguyen prior to Nguyen's placement of the sell order. It does not suffice for the SEC to state that Nguyen "lacked an innocent explanation," where the burden is on the SEC to provide evidence that Nguyen used material non-public information in executing his trades.

*Id.* In light of the paucity of the Commission's evidence, the court granted summary judgment in favor of Nguyen.

The Commission's allegations here are even thinner than the evidence presented by the Commission in *Truong*. Unlike *Truong*, in which the Commission pointed to a phone conversation between the tipper and the tippee, followed by additional suspicious trades, the Commission here only has allegations of a friendship and a trade. It does not allege a specific phone call or any other conversation. *See Sargent*, 229 F.3d at 72 (tipper and tippee had dinner together on the evening the confidential information was allegedly disclosed).

The Complaint also lacks any allegations to suggest that Jones' trade on January 3, 2003 was out of the ordinary, which again is the type of evidence courts rely on to buttress a circumstantial insider trading case. *Sargent*, 229 F.3d at 72 (tippee's purchase of a target's stock was the largest purchase he had ever made); *SEC v. Blackwell*, 291 F. Supp. 2d 673, 683 (S.D. Ohio 2003) (stock purchases of target by two of the defendant tippees was their largest investment ever in a single stock, representing 150 percent of their combined annual income).

The SEC also fails to allege here any communications between Jones and a third party (for example, a broker) that would give rise to an inference of insider trading. This is in stark contrast to the factors found by the First Circuit in *Sargent*, where the Court noted that the "Commission presented evidence that the first business day following his dinner [between the tipper and tippee, the tippee] contacted his broker before the market opened and stated that he had heard something over the weekend about [the target company]." *Sargent*, 229 F.3d at 75. Further, the tippee in *Sargent* proceeded with the purchase despite a negative recommendation from his broker. *Id.*

Finally, the Commission does not allege with any specificity that Jones knew the information allegedly conveyed to him was the result of a breach of trust. While the Complaint contains a generalized allegation that Jones knew or should have known the information was

11

conveyed in breach of a duty owed to Dr. Rocklage or to Cubist and/or its shareholders, there are no allegations that Jones knew or reasonably should have known how the information was obtained by Beaver and from whom he obtained it. Nor are there allegations that Jones knew or should have known how the individual who allegedly tipped Beaver had obtained the information, or that Jones knew or should have known under what circumstances the information had been obtained by that individual. There can be no question that allegations on these factual points are critical. The allegations would explain how Jones could reasonably know the information allegedly conveyed by Beaver had been obtained in violation of a duty of trust and confidence. *See Dirks,* 463 U.S. at 657 n.15 ("mere possession of nonpublic information does not give rise to a duty to disclose or abstain; only a specific relationship does that"). The fact that these allegations are missing indicates the Commission cannot plead its claims against Jones with the requisite particularity.

      In the end, the Commission's claims against Jones are based on speculative inferences drawn from a friendship and the timing of a trade. When viewed in light of the substantial circumstantial evidence courts look to when considering the sufficiency of a claim for insider trading, there can be little question that the Commission's complaint lacks the particularity required by Rule 9(b) and should therefore be dismissed.

WHEREFORE, for the foregoing reasons, Defendant David G. Jones respectfully requests that the Complaint against him be dismissed in its entirety.

        Respectfully submitted,

        Defendant
        David G. Jones
        By his attorneys,


        /s/ Brian E. Whiteley
        Brian E. Whiteley (BBO #555683)
        C. Alex Hahn (BBO #634133)
        SCIBELLI , WHITELEY AND STANGANELLI, LLP
        50 Federal Street, 5th Floor
        Boston, MA 02110
        (617) 227-5725

## CERTIFICATE OF SERVICE

I hereby certify that, on February 18, 2005, I caused a true copy of the above document to be served upon the following counsel electronically through the ECF system and by United States mail, first class, postage prepaid:

| | |
|---|---|
| Luke T. Cadigan, Esq.<br>73 Tremont Street, Suite 600<br>Boston, MA 02108 | David H. Erichsen<br>Daniel H. Gold<br>WILMER CUTLER PICKERING<br> HALE & DORR LLP<br>60 State Street<br>Boston, MA 02109 |

David E. Marder
Benjamin D. Stevenson
ROBINS, KAPLAN MILLER
 & CIRESI LLP
111 Huntington Ave.
Suite 1300
Boston, MA 02199
(617) 267-2300
(617) 267-8288 (fax)


                                        /s/ Brian E. Whiteley
                                        Brian E. Whiteley