UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES & EXCHANGE COMMISSION<br><br>     Plaintiff<br><br>  v.<br><br>PATRICIA B. ROCKLAGE, WILLIAM M. BEAVER, and DAVID G. JONES<br><br>     Defendants. | C.A. No. 05-CV-10074 MEL |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO RECONSIDER ORDER DENYING THEIR MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. §1292(b)**

**TABLE OF CONTENTS**

**Background** ........................................................................................................................1

**I.  Reconsideration is Necessary Given the Clearly Mistaken Premise Underlying this Court's Denial of the Motion to Dismiss**..........................................................2

    A.    This Court's Reasoning on the Misappropriation Theory Claim .......................2

    B.    This Court Clearly Misread the Facts of *O'Hagan* and Thereby Made an Erroneous Distinction Concerning the Rationale of *O'Hagan* .............................................3

**II.  The Order Clearly Satisfies The Criteria For Certification For Interlocutory Appeal Under 28 U.S.C. §1292(b).** ......................................................................7

    A.    The Order Involves a Controlling Question of Law............................................7

    B.    There is Substantial Ground for Difference of Opinion Concerning the District Court's Application of the Misappropriation Theory..........................................8

    C.    Immediate Appeal Would Materially Advance the Ultimate Termination of the Litigation..............................................................................................................9

**Conclusion** ......................................................................................................................10

## TABLE OF AUTHORITIES

### Federal Cases

Aybar v. Crispin-Reyes,
   118 F.3d 10 (1st Cir. 1997) ............................................................................................ 2

Gunter v. Hutcheson,
   492 F.Supp. 546 (N.D. Ga. 1980) .................................................................................. 8

Heddendorf v. Goldfine,
   263 F.2d 887 (1st Cir. 1959) .......................................................................................... 9

In re Cement Antitrust Litigation,
   673 F.2d 1020 (9th Cir. 1982) (en banc) ....................................................................... 7

Katz v. Carte Blanche Corp.,
   496 F.2d 747 (3rd Cir. 1974) (en banc) ......................................................................... 7

Klinghoffer v. S.N.C. Achille Lauro,
   921 F.2d 21 (2nd Cir. 1990) .......................................................................................... 7

Longwood Manufacturing Corp. v. Wheelabrator Clean Water Systems, Inc.,
   954 F.Supp. 17 (D.Maine 1997) .................................................................................... 7

Lopez v. Bulova Watch Co.,
   582 F.Supp. 755 (D.R.I. 1984) ...................................................................................... 7

McGillicuddy v. Clements,
   746 F.2d 76 (1st Cir. 1984) ............................................................................................ 8

United States v. O'Hagan,
   521 U.S. 642 (1997) ............................................................................................... passim

Vega v. Hernandez,
   _ F.Supp.2d _, 2005 WL 1925713 (D.P.R. Aug. 9, 2005) ........................................ 2, 6

### Federal Statutes

15 U.S.C. §78j(b) ................................................................................................................. 2

28 U.S.C. §1292(b) ....................................................................................................... passim

### Other

ABA Model Rules of Professional Conduct, Rule 1.6 (2004) ............................................ 5

16 Charles Alan Wright et al., Federal Practice and Procedure §3929 (1996) .................. 9

19 James Wm. Moore, *Moore's Federal Practice* §203.31 (3rd ed. 2005) ..................................7, 8

Defendants Patricia M. Rocklage, William M. Beaver, and David G. Jones (collectively, "Defendants") respectfully move for reconsideration of the Court's August 23, 2005, Memorandum and Order ("Order") denying their motion to dismiss the Complaint or, in the alternative, for certification of the Order for interlocutory appeal pursuant to 28 U.S.C. §1292(b). Defendants submit, with due respect to the Court, that the Order was based on a materially incorrect reading of the facts of *United States v. O'Hagan*, 521 U.S. 642 (1997), controlling Supreme Court precedent which holds that there can be no liability under the misappropriation theory of insider trading where (as here) the defendant discloses her intent to her source. Alternatively, if reconsideration is denied, Defendants request this Court to amend the Order to certify for interlocutory appeal the dispositive legal question whether, in light of *O'Hagan*, the Securities and Exchange Commission ("SEC") can proceed against Defendants on a misappropriation theory despite Rocklage's prior disclosure to her husband, the source of the inside information.

**Background**

According to the Complaint, Rocklage learned from her husband, the Chairman and CEO of Cubist Pharmaceuticals, Inc. ("Cubist"), that Cubist had received negative results in clinical trials for a new drug. (Compl. ¶ 6, 12). Shortly thereafter, Rocklage told her husband that she intended to warn Beaver, her brother, about the results so that he could sell his Cubist stock. (*Id.* ¶ 16). Rocklage, over her husband's objection, signaled Beaver, who then sold all his Cubist stock. (*Id.* ¶ 16-19). In turn, Beaver allegedly tipped Jones, his neighbor, about the negative trial results, thereby inducing Jones to sell his Cubist stock as well. (*Id.* ¶ 19-21). The SEC then filed a Complaint against all three defendants for violations of federal insider trading laws. (*Id.* ¶ 1).

Rocklage moved to dismiss the Complaint on the grounds that (1) her lack of insider status precludes liability under the "classical theory" of insider trading and (2) her disclosure to her husband precludes liability under the "misappropriation theory" of insider trading. Beaver and Jones also moved for dismissal on the ground that they could not be held liable if Rocklage is not. Although the Court agreed with Rocklage that the SEC had no claim under the classical theory, the Court denied the motion to dismiss because it found that liability could exist under the misappropriation theory despite Rocklage's pre-tip disclosure to her husband. Order, at 12, 17. As set out below, that ruling was based on a clearly incorrect reading of the facts of *O'Hagan* and a resulting erroneous distinction between *O'Hagan* and this case.

## I. Reconsideration is Necessary Given the Clearly Mistaken Premise Underlying this Court's Denial of the Motion to Dismiss.

A motion to reconsider should be granted "to correct manifest errors of law or fact." *Vega v. Hernandez*, _ F.Supp.2d _, 2005 WL 1925713, at *1-2 (D.P.R. Aug. 9, 2005); *see also Aybar v. Crispin-Reyes*, 118 F.3d 10, 16 (1st Cir. 1997) (reciting same standard for motions to amend judgment brought pursuant to Federal Rule of Civil Procedure 59(e)). Because this Court's error concerning the facts of *O'Hagan* is manifest and central to its decision, reconsideration of the Order denying Defendants' motion to dismiss is required.

### A.   This Court's Reasoning on the Misappropriation Theory Claim

Section 10(b) of the Securities Exchange Act of 1934 proscribes using any "deceptive device" in connection with the trade of securities. 15 U.S.C. §78j(b). Critically, under the misappropriation theory of §10(b) liability as articulated by the Supreme Court in *O'Hagan*, it is the *source* of the inside information that is deceived, *not* the shareholder who ultimately purchased (or sold) the security. This distinction could not be clearer: *O'Hagan* outlaws a

corporate outsider's "*undisclosed*, self-serving use" of confidential information to trade securities, "in breach of a duty owed not to a trading party, but to the source of the information." *O'Hagan*, 521 U.S. at 652-53 (emphasis added).[1]

This Court framed the inquiry on application of the misappropriation theory as follows: "The question is whether the facts of the instant case distinguish it from *O'Hagan* so that her disclosure did not remove the 'deceptive device' from the equation." Order, at 11. In answering yes, the Court relied primarily on the following explanation of *O'Hagan*:

> The source of inside information in *O'Hagan* was a law firm which contracted to do business *with the company whose stock O'Hagan illegally traded. Because of the firm's obligations to the company, O'Hagan's hypothetical disclosure to his firm would have been tantamount to informing the shareholders, and they would not have been deceived.* In the instant case, however, no such relay of information could reasonably have been expected. Although Rocklage's husband (Cubist's CEO) was under a fiduciary obligation to Cubist, his loyalties lay first and foremost with his wife, both legally and pragmatically. Therefore, because of the special nature of the marital relationship, disclosure in this case did nothing to cure Rocklage's manipulation of the stock market and Cubist's shareholders were accordingly deceived. Order, at 11 (emphasis added).

In further support of its conclusion, the Court referred to SEC Rule 10b5-1 (specifying affirmative defenses to insider trading), arguing that "the absence of disclosure as an affirmative defense suggests that the SEC intended to let the courts determine the relative weight of disclosure based on the specific facts of each case." Order, at 12.

### B. This Court Clearly Misread the Facts of *O'Hagan* and Thereby Made an Erroneous Distinction Concerning the Rationale of *O'Hagan*

A review of the Supreme Court's opinion in *O'Hagan* reveals that this Court was mistaken concerning the key facts regarding the relationship among the defendant-lawyer O'Hagan, his

---

[1] Although §10(b) liability for insider trading was previously focused only on deception of shareholders, resulting from the breach of an insider's fiduciary duty through his use of nonpublic information, *O'Hagan*'s recognition of the misappropriation theory extended the underpinnings of insider trading liability beyond shareholder deception to deception of the source of the inside information. *See id*. at 650-52.

-3-

law firm, and the shareholders of the company whose stock O'Hagan traded.  Contrary to this Court's description, O'Hagan's law firm was *not* "contracted to do business with the company whose stock O'Hagan illegally traded."  Order, at 11.  Rather, O'Hagan's law firm represented the tender offeror (Grand Met), not the target company whose stock O'Hagan traded (Pillsbury).  *See O'Hagan*, 521 U.S. at 647 ("Grand Metropolitan PLC (Grand Met)… retained Dorsey & Whitney [O'Hagan's law firm] as local counsel to represent Grand Met regarding a potential tender offer for the common stock of the Pillsbury Company."); *id.* at 647-48 ("[W]hile Dorsey & Whitney was still representing Grand Met, O'Hagan began purchasing call options for Pillsbury stock. … When Grand Met announced its tender offer … O'Hagan then sold his Pillsbury call options and common stock, making a profit of more than $4.3 million.").

As a direct result of its mistaken reading of the facts, this Court mistakenly reasoned that the rationale of *O'Hagan* is that a defendant's disclosure to his source negates liability ("removes the 'deceptive device'") because it effectively notifies (either directly or indirectly) the shareholders of the company whose securities are traded of any plans to trade on the misappropriated information.  Order, at 11.  The Court then finds that presumed rationale inapplicable to the facts of this case, finding that Rocklage's disclosure to her husband would not because of marital confidentiality result in disclosure to Cubist's shareholders of her intent to tip her brother.

-4-

However, the rationale this Court ascribed to *O'Hagan* not only appears nowhere in the language of the opinion, but is plainly contradicted by the actual facts of the case.[2] Contrary to the Court's explicit presumption, the hypothetical disclosure by O'Hagan would *never* have reached the target company's shareholders because O'Hagan's firm represented the *bidder*, not the target (as this Court believed). Indeed, while the law firm could have disclosed O'Hagan's behavior and plans to its own client, Grand Met, the firm likely had a duty *not* to disclose to Pillsbury or its shareholders. *Cf.* ABA Model Rules of Professional Conduct, Rule 1.6 (2004) ("A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by [certain enumerated, but inapposite, exceptions]."); *O'Hagan*, 521 U.S. at 647 ("Both Grand Met and Dorsey & Whitney took precautions to protect the confidentiality of Grand Met's tender offer plans."). Thus, when the Supreme Court in *O'Hagan* held that disclosure to the source negated liability, it could not have had as its unstated rationale any notion that disclosure would have reached the shareholders and cured any potential for shareholder harm. To the contrary, the Supreme Court's *explicit* rationale was that disclosure to the source negated the element of "deception" because the deception that matters under the misappropriation theory is that of the *source*, not the shareholders:

---

[2] Put another way, this Court's reading of *O'Hagan* ignores the very reason why the government in *O'Hagan* had to resort to the misappropriation theory in the first place: if the law firm had in fact represented the target company, as this Court mistakenly believed, the classical theory would have sufficed for liability since O'Hagan likely would have qualified as a "temporary insider." *See id.* at 652 ("The classical theory applies not only to officers, directors, and other permanent insiders of a corporation, but also to *attorneys*, accountants, consultants, and others who temporarily become fiduciaries of a corporation.") (emphasis added). The Court thus missed the point that the misappropriation theory (and the requisite element of non-disclosure to the source of information) is designed to extend beyond cases where there is a relationship between the defendant and the shareholders. *See id.* at 653 n.5 ("The Government could not have prosecuted O'Hagan under the classical theory, for O'Hagan was not an 'insider' of Pillsbury, the corporation in whose stock he traded. … Under the misappropriation theory, O'Hagan's securities trading does not escape Exchange Act sanction … simply because he was associated with, and gained nonpublic information from, the bidder, rather than the target.")

> [F]ull disclosure forecloses liability under the misappropriation theory: Because the deception essential to the misappropriation theory involves feigning fidelity to the source of information, if the fiduciary discloses to the source that he plans to trade on the nonpublic information, there is no "deceptive device" and thus no §10(b) violation … . *O'Hagan*, 521 U.S. at 655.

It is thus entirely irrelevant to the misappropriation theory whether Rocklage's disclosure to her husband would have reached Cubist shareholders. *See id.* at 659 n.9 ("[T]he textual requirement of deception precludes §10(b) liability when a person trading on the basis of nonpublic information has disclosed his trading plans to, or obtained authorization from, the principal— *even though such conduct may affect the securities markets in the same manner as the conduct reached by the misappropriation theory*.") (emphasis added). What "removes the 'deceptive device'" is that she disclosed her intent to her husband, just as O'Hagan's hypothetical disclosure to his law firm would have negated liability. There is, in short, no meaningful way to distinguish the facts of this case from the facts of *O'Hagan*.[3]

Given that the Court's Order is based on a clear misreading of the facts of *O'Hagan* and a resulting erroneous distinction between the facts of that case and the facts here, Defendants' motion to dismiss the Complaint should be granted upon reconsideration.[4] *See Vega*, 2005 WL 1925713, at *1 (stating reconsideration proper "to correct manifest errors of law or fact").

---

[3] To the extent that this Court relied on SEC Rule 10b5-1 to support its contrary conclusion (Order, at 12), that rule is beside the point here under a correct reading of *O'Hagan*. As *O'Hagan* makes clear, the defendant's non-disclosure of an intent to trade on inside information is an essential element of liability under the misappropriation theory because otherwise there is no "deceptive device" as required by §10(b). *See O'Hagan*, 521 U.S. at 655 ("if the fiduciary discloses to the source … there is no 'deceptive device' and thus no §10(b) violation"); *id*. at 660 ("deceptive nondisclosure is essential to the §10(b) liability at issue"). Disclosure, therefore, is not an "affirmative defense," and nothing can be inferred from the SEC's failure to include disclosure to the source as an affirmative defense in Rule 10b5-1. Moreover, what is at issue here is what the Supreme Court said in *O'Hagan*, not how the SEC interprets *O'Hagan*.

[4] This Court has already correctly rejected the only other alleged basis for liability against Rocklage – the classical theory of insider trading – since she does not qualify as a "temporary insider." Order, at 17.

## II. The Order Clearly Satisfies The Criteria For Certification For Interlocutory Appeal Under 28 U.S.C. §1292(b).

If the Court denies reconsideration, it should certify the Order for interlocutory appeal, specifically on the central question whether Rocklage's pre-tip disclosure to her husband, the source of her inside information, precludes liability under the misappropriation theory of insider trading. An immediate appeal on this dispositive legal issue would avoid significant expenditure of the Court's and the parties' resources and eliminate the evident risk of having all further proceedings mooted by a subsequent appeal. Section 1292(b) provides that a district judge shall certify an order for interlocutory appeal when such order "involves a *controlling question of law* as to which there is *substantial ground for difference of opinion* and that an immediate appeal from the order may *materially advance the ultimate termination of the litigation*." 28 U.S.C. §1292(b) (emphasis added). The question presented here clearly satisfies the requirements for certification. Indeed, as demonstrated below, it is difficult to imagine a case that more squarely meets the §1292(b) criteria.

### A. The Order Involves a Controlling Question of Law

A question is clearly "controlling" for purposes of §1292(b) if reversal of the district court's conclusion would end the litigation. *See Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2nd Cir. 1990) ("Although the resolution of an issue need not necessarily terminate an action in order to be 'controlling,' … it is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action.") (granting interlocutory appeal for denial of a motion to dismiss on various jurisdictional grounds); *In re Cement Antitrust Litigation*, 673 F.2d 1020, 1026 (9th Cir. 1982) (en banc) ("[A]ll that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of

litigation in the district court."); *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3rd Cir. 1974) (en banc) ("A controlling question of law must encompass at least every order which, if erroneous, would be reversible error on final appeal.").

Motions to dismiss based on the failure to state a cognizable claim present quintessential "controlling questions of law" for §1292(b) purposes. *See* 19 James Wm. Moore, *Moore's Federal Practice* §203.31[2] (3rd ed. 2005) ("Controlling questions of law that fall within this category of dispositive issues include the question of whether a claim exists as a matter of law … ."); *see also, e.g.*, *Longwood Manufacturing Corp. v. Wheelabrator Clean Water Systems, Inc.*, 954 F.Supp. 17, 19 (D.Maine 1997) (granting §1292(b) certification of order denying defendant's motion to dismiss); *Lopez v. Bulova Watch Co.*, 582 F.Supp. 755, 766 (D.R.I. 1984) (same). Here, the purely legal question whether Rocklage's disclosure to her husband precludes liability for insider trading would be dispositive if decided in Defendants' favor, and thus constitutes a "controlling question of law."

### B.     There is Substantial Ground for Difference of Opinion Concerning the District Court's Application of the Misappropriation Theory

The "substantial ground" requirement exists primarily to avoid frivolous interlocutory appeals where the district court's decision is clearly correct. *See* 19 *Moore's Federal Practice* §203.31[4] ("If the law is clear and there is no question that the district court's order is correct as a matter of law, then there is no purpose appealing the ruling [under §1292(b)]."). That is manifestly not the case here. For the reasons discussed in Part I above, it is plain that *O'Hagan* precludes liability under the misappropriation theory of insider trading where (as here) the defendant discloses her intent to her source of the inside information – regardless of whether that disclosure will also reach the shareholders.

The "substantial ground" requirement also can be satisfied by pointing to "difficult and pivotal questions of law not settled by controlling authority," *McGillicuddy v. Clements*, 746 F.2d 76, 77 n.1 (1st Cir. 1984), or to issues of first impression, *see Gunter v. Hutcheson*, 492 F.Supp. 546, 565 (N.D. Ga. 1980). If *O'Hagan* is not dispositive – and Rocklage of course maintains that it is and that this Court's error is clear – the question then cannot be considered settled because there are no cases in any jurisdiction analyzing in the marital context the question whether disclosure to the source negates liability. Further illustrative of the "difference of opinion" in this area, and the importance of interlocutory review, is the fact that the SEC itself – the agency charged with enforcing the insider trading laws – apparently takes the unsupported view that disclosure to the source does not negate liability when a spouse is the source of the inside information.

### C. Immediate Appeal Would Materially Advance the Ultimate Termination of the Litigation

There is no question that an immediate appeal in this case "may materially advance the ultimate termination of the litigation." 28 U.S.C. §1292(b). Reversal on interlocutory appeal would end the entire case, because it would eliminate the only claim left against Rocklage and the claims against the other defendants (based on derivative tippee liability) cannot proceed if Rocklage wins dismissal. Order, at 18-19 ("*To the extent that Rocklage is ultimately found liable*, that liability attaches to downstream tippees if they know or should have known of Rocklage's breach of duty.") (emphasis added). Thus, an immediate appeal, if successful, plainly would "avoid protracted or expensive litigation," *Heddendorf v. Goldfine*, 263 F.2d 887, 888 (1st Cir. 1959) (describing criteria for granting interlocutory appeal under §1292(b)), and

avoid the unnecessary expenditure of resources by all parties – defendants, the SEC, and the Court alike – if this case were to proceed to trial.

## Conclusion

For all the foregoing reasons, Defendants respectfully request that the Court reconsider its August 23, 2005 Order and grant their motion to dismiss or, in the alternative, certify the Order for interlocutory appeal pursuant to 28 U.S.C. §1292(b).

Specifically as to certification, Defendants request that the Court amend the Order to include the required statutory language noting that the Order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." If the Court grants certification, then Defendants also request a stay of all further proceedings in this Court pending resolution of the application for interlocutory appeal and subsequent appeal by the First Circuit. *See* 16 Charles Alan Wright et al., *Federal Practice and Procedure* §3929 (1996) ("A stay may be appropriate if the certified order may dispose of the entire case without need for further proceedings … .").

Respectfully Submitted,

/s/ David H. Erichsen
David H. Erichsen (BBO #155600)
Peter Spaeth (BBO #545202)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109
(617) 526-6000
(617) 526-5000 (facsimile)
*Attorneys for defendant Patricia B. Rocklage*

/s/ David E. Marder

-10-

        David E. Marder (BBO #552485)
        Robins, Kaplan, Miller & Ciresi LLP
        111 Huntington Avenue
        Boston, MA 02199
        617-267-2300
        Fax: 617-267-8288
        *Attorneys for defendant William M. Beaver*

        <u>/s/ Brian E. Whiteley</u>
        Brian E. Whiteley (BBO #555683)
        Scibelli, Whiteley and Stanganelli, LLP
        50 Federal Street, 5th Floor
        Boston, MA 02110
        617-227-5725
        Fax: 617-722-6003
        *Attorneys for defendant David G. Jones*

Dated:  September 13, 2005