UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | **CIVIL ACTION** |
| : | **NO. 05-CV-10074-MEL** |
| PATRICIA B. ROCKLAGE, WILLIAM M. : | |
| BEAVER and DAVID G. JONES, : | |
| : | |
| Defendants. : | |

**SECURITIES AND EXCHANGE COMMISSION'S OPPOSITION
TO DEFENDANTS' MOTION TO RECONSIDER ORDER OR, IN THE
ALTERNATIVE, TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL**

Plaintiff, the Securities and Exchange Commission (the "SEC"), hereby opposes

the motion (the "Motion") filed by Defendants Patricia B. Rocklage ("P. Rocklage"),

William M. Beaver ("Beaver") and David G. Jones ("Jones") (collectively, the

"Defendants") (1) to reconsider the Court's August 23, 2005 Memorandum and Order

(the "Order") denying their motions to dismiss the Complaint, or in the alternative, (2) to

certify the Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  First, because

the Court did not make an error of law (much less a manifest error of law) in rendering its

decision, the Defendants' motion for reconsideration should be denied.  *See* Part I, *infra*.

Second, because the Defendants have failed to show the exceptional circumstances

required for an interlocutory appeal, the Defendants' request for certification for such

appeal should also be denied.  *See* Part II, *infra*.

## BACKGROUND

The SEC filed its Complaint in this matter on January 12, 2005. In it, the SEC alleges that, on December 31, 2001, P. Rocklage learned from her husband, Scott M. Rocklage, Ph.D. ("S. Rocklage"), the then Chairman of the Board and Chief Executive Officer of Cubist Pharmaceuticals, Inc. ("Cubist"), that Cubist had received negative results in clinical trials for one of the company's most important products. Complaint, at ¶ 1. At some point shortly thereafter, P. Rocklage told her husband that she intended to give her younger brother, Beaver, "a wink and a nod" concerning the negative trial results so Beaver could sell his Cubist stock. *Id.* Although her husband urged her not to do so, P. Rocklage insisted on tipping her brother and thereby induced him to sell his stock. *Id.* On the morning of January 2, 2002, after receiving this signal from his sister, Beaver sold all his Cubist stock. *Id.* In turn, Beaver tipped his close friend and neighbor, Jones, to the negative news about Cubist, thereby inducing him to sell all his Cubist stock. *Id.*

On February 18, 2005, the Defendants filed motions to dismiss the Complaint. These motions were premised primarily on the notion that given language in the Supreme Court's decision in *United States v. O'Hagan*, 521 U.S. 642 (1997), P. Rocklage's disclosure to her husband negated the Defendants' liability. On August 23, 2005, after the issue had been briefed and argued, the Court denied the Defendants' motions, finding, *inter alia*, that the unique circumstances raised by the marital relationship in this matter distinguished P. Rocklage's disclosure from that discussed in *O'Hagan*. On September 13, 2005, the Defendants filed the instant Motion.

## ARGUMENT

## I.   THE DEFENDANTS' MOTION FOR RECONSIDERATION SHOULD BE DENIED.

To succeed on their motion for reconsideration, Defendants must show that

reconsideration is necessary "to correct [a] manifest error[] of law." *See* Defendants'

Memorandum in Support of Motion, at 2 (citing purported error as basis of motion for

reconsideration); *see also Vega v. Hernandez*, No. 03-1902(DRID), 2005 WL 1925713,

at *1-2 (D.P.R. Aug. 9, 2005) (listing possible bases for reconsideration).[1]  However,

such a motion should not be used by a losing party "to repeat old arguments previously

considered and rejected, or to raise new legal theories that should have been raised

earlier." *National Metal Finishing Co., Inc. v. Barclays American/Commercial, Inc.,* 899

F.2d 119, 123 (1st Cir. 1990); *see also Villanueva-Mendez v. Nieves Vazquez*, 360

F.Supp.2d 320, 324 (D.P.R. Mar. 2, 2005) (quoting *Williams v. City of Pittsburgh*, 32

F.Supp.2d 236, 238 (W.D.Pa.1998)) ("'a motion for reconsideration is not properly

grounded in a request for a district court to rethink a decision it has already made, rightly

or wrongly.'")).  Further, as numerous courts have noted:

> [M]otions for reconsideration must be strictly reviewed for at least four
> reasons. First, it would tend to undercut the court's first decision and
> transform it into an advisory opinion, which is prohibited.  Second,
> motions for reconsideration run counter to the operation of the Federal
> Rules of Civil Procedure, which provide all the necessary safeguards to
> promote fair decisions.  Third, broad interpretation of motions for
> reconsideration is not supported by controlling precedent. And last but not
> least, reconsideration of dispositive decisions . . . hinders the court's
> ability to decide motions awaiting resolution that have yet to be reviewed
> once, let alone twice.

---

[1] Although the Federal Rules of Civil Procedure do not specifically provide for the filing of motions for reconsideration, Rule 59(e)'s legal standards are applied to motions for reconsideration of interlocutory orders. *See Vega*, 2005 WL 1925713, at *2; *Jiminez v. Altieri*, No. 01-1544(DRD), 2005 WL 1243218, at *2 (D.P.R. May 24, 2005).

*See, e.g., Vega*, 2005 WL 1925713, at *2 (quoting *Williams*, 32 F.Supp.2d at 238)(internal quotation marks omitted); *Villanueva-Mendez*, 360 F.Supp.2d at 323-24 (same). As a result, motions for reconsideration are typically denied and should be granted only in exceptional circumstances. *See Vega*, 2005 WL 1925713, at *2.

Indeed, a "motion for reconsideration should be granted only if the court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the court by the parties, or has made an error not of reasoning but apprehension." *Sandoval Diaz v. Sandoval Orozco*, Civil No. 01-1022 (JAG/GAG), 2005 WL 1501672, at *2 (D.P.R. 2005) (citing *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1991 (7th Cir.1990)); *see also Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 195 (1st Cir. 2004) (citing Black's Law Dictionary 563 (7th ed. 1999)) ("Manifest error" is one that "is plain and indisputable, and that amounts to a complete disregard of the controlling law").

Here, the Court made no error of law, much less a "manifest error of law," in rendering its decision. In its motions to dismiss, the Defendants relied on language in *United States v. O'Hagan* for the proposition that there is no deceptive device where a fiduciary discloses to his source that he plans to trade on the nonpublic information. In its opposition, the SEC argued that the complex circumstances of the marital relationship distinguished this matter from *O'Hagan*, which involved an ordinary principal-agent relationship. *See* SEC's Opposition to Defendants' Motion to Dismiss, at 10-15. The SEC asserted that disclosure to a spouse simply cannot constitute the type of full or adequate disclosure sufficient to negate liability. *See id.* at 15.

After giving due consideration to the arguments advanced, the Court properly

framed the issue and resolved it: "The question is whether the facts of the instant case

distinguish it from *O'Hagan* so that her disclosure did not remove the 'deceptive device'

from the equation. I find that they do." Order, at 11. The Court reasoned:

> Disclosure -- whether to shareholders or to the source -- is required in
> insider trading cases because it ultimately serves to prevent shareholders
> from being manipulated by investors with an unfair advantage. . . . In the
> instant case, however, no such relay of information could reasonably have
> been expected. Although Rocklage's husband (Cubist's CEO) was under
> a fiduciary obligation to Cubist, his loyalties law first and foremost with
> his wife, both legally and pragmatically. Therefore, because of the special
> nature of the marital relationship, disclosure in this case did not to cure
> Rocklage's manipulation of the stock market and Cubist's shareholders
> were accordingly deceived.

*Id.* at 11. Rejecting Defendants' argument that "husband-wife disclosure has the same

legal effect as principal-agent disclosure, that is, to preclude liability under the

misappropriation theory," the Court also noted

> If the SEC had intended to include disclosure as an affirmative defense to
> the misappropriation theory of insider trading in Rule 10b5-2, it certainly
> could have done so. The absence of disclosure as an affirmative defense
> suggests that the SEC intended to let the courts determine the relative
> weight of disclosure based on the specific facts of each case, as the
> Supreme Court did in *O'Hagan*.

*Id.* at 12. Weighing the effect of Rocklage's disclosure in the context in which it was

made, the Court found that "Rocklage's disclosure to her husband did not remove the

deceptive device from Rocklage's conduct and accordingly does not insulate her from

liability under the misappropriation theory." *Id.* at 12. There was nothing erroneous in

the Court's conclusion or in the manner in which it arrived at that conclusion.

Unable to attack the relevant underpinnings of the Court's decision, the

Defendants seize on a supposed mistake regarding the facts of *O'Hagan* that does not, in

any way, compromise the Court's reasoning or result.  More specifically, the Defendants

claim that the Order should be reconsidered because they claim the Court erred when it

stated:

> The source of inside information in *O'Hagan* was a law firm which
> contracted to do business with the company whose stock O'Hagan
> illegally traded.  Because of the firm's obligations to the company,
> O'Hagan's hypothetical disclosure to his firm would have been
> tantamount to informing the shareholders, and they would not have been
> deceived.

*Id.* at 11.  The Defendants point out that O'Hagan's law firm did not represent the

company whose stock O'Hagan traded, but instead, represented the company that

eventually made the tender offer on that company's stock.  *See* Defendant's

Memorandum in Support of Motion, at 4.  However, this fact is not material.  As the

*O'Hagan* Court made clear, such a detail did not affect O'Hagan's liability -- he would

have been held liable regardless of whether his firm worked for the bidder or for the

target.  *See* 521 U.S. at 659 ("considering the inhibiting impact on market participation of

trading on misappropriated information, and the congressional purposes underlying §

10(b), it makes scant sense to hold a lawyer like O'Hagan a § 10(b) violator if he works

for a law firm representing the target of a tender offer, but not if he works for a law firm

representing the bidder.").  Given the inconsequential nature of the error Defendants cite,

the Defendants' motion should be denied.  *See Kalman v. Berlyn Corp.*, 706 F. Supp.

970, 974 (D. Mass. 1989) (To establish a manifest error of law, the moving party must

show "some substantial reason that the court is in error.").

More importantly, whatever error the Defendants ascribe to the Court's recitation

of the O'Hagan facts, it did not render the Court's conclusions incorrect.  Even if as the

Defendants contend, O'Hagan's disclosure to his firm would not have been tantamount to

informing the shareholders, it would have been tantamount to informing the firm and its client, who served as the ultimate source of the information and who would have had the opportunity and motivation to take action remedy the situation. *See O'Hagan*, 521 U.S. at 655 n.6 (describing law firm and client as the source of the information); *id.* at 659 n.9 ("once a disloyal agent discloses his imminent breach of duty, his principal may seek appropriate equitable relief under state law."). By contrast, P. Rocklage's disclosure could not have reasonably been expected to reach anyone who could have been expected to act upon it. As the Court found, it was not reasonable to expect that P. Rocklage's disclosure to her husband would be conveyed to Cubist or to its shareholders. As a result, the disclosure could not have been expected to prevent the manipulation of the stock market and deceit of the shareholders in the instant action. For these reasons, P. Rocklage's disclosure, made as it was in the safe confines of the marital relationship, is distinguishable from the agent-to principal disclosure hypothesized in *O'Hagan*.

Thus, because the Court did not make an error of law, much less a manifest error of law, the Court should deny the Defendants' motion for reconsideration.

## II.    DEFENDANTS' MOTION, IN THE ALTERNATIVE, FOR CERTIFICATION FOR INTERLOCUTORY REVIEW SHOULD ALSO BE DENIED.

Federal courts generally adhere to the "final judgment rule," which provides that only final resolutions of litigation may be appealed. *Estates of Ungar ex rel. Strachman v. Palestinian Auth.,* 228 F.Supp.2d 40, 49 (D.R.I. 2002) *aff'd sub nom. Ungar v. Palestinian Liberation Org.*, NO. 03-1544, 2003 WL 21254790 (1st Cir. May 27, 2003); *Cummins v. EG & G Sealol, Inc.*, 697 F. Supp. 64, 66 (D.R.I. 1988). "The final judgment rule prevents the creation of additional burdens on courts and litigants which could result

from a multitude of interlocutory appeals whose issues might later become moot."

*Estates of Ungar,* 228 F.Supp.2d at 49.  As the District Court for the District of Rhode

Island has noted,

> Rather than face the added expense and delay endemic to an appeal, it is
> more efficacious, both for the courts and the litigants, to reach a final
> judgment at the trial level.  If appeal is necessary as to the . . . issue after
> trial, it may be taken at that point; however, it is very possible that the
> issue will become moot, and that the Court of Appeals will never be
> required to consider the problem at all.

*Cummins,* 697 F. Supp. at 69 (citing *In Re Heddendorf,* 263 F.2d 887, 889 (1st Cir.

1959)).  Further, by "avoiding interlocutory appeals, the trial process may proceed more

rapidly, for it will not have to be stalled while waiting for an appellate ruling on some

point."  *Id.* (citation and internal quotation marks omitted).

Notwithstanding the final judgment rule, 28 U.S.C. § 1292(b) permits

interlocutory appeals in certain cases, subject to district and appellate court discretion.

*See Cummins,* 697 F.Supp. at 68.  As a primary matter, a party seeking an interlocutory

appeal must show:  (1) that the interlocutory appeal involves a controlling question of

law; (2) that there is "substantial ground for difference of opinion;" and (3) that

immediate appeal has the potential to materially advance the termination of the litigation.

*See* 28 U.S.C. § 1292(b); *Estates of Ungar,* 228 F. Supp. 2d at 50.

Even then, however, such a request should only be granted in "very rare

circumstances." *See Estates of Ungar,* 228 F.Supp.2d at 49; *Cummins,* 697 F. Supp. at

67-68.  As the First Circuit has stated, "interlocutory certification under 28 U.S.C. §

1292(b) should be used sparingly and only in exceptional circumstances, and where the

proposed intermediate appeal presents one or more difficult and pivotal questions of law

not settled by controlling authority." *McGillicuddy v. Clements*, 746 F.2d 76, 76 n.1 (1st
Cir. 1984).

Further, the First Circuit has indicated that as a general rule, it will "not grant
interlocutory appeals from a denial of a motion to dismiss." *Caraballo-Seda v.*
*Municipality of Hormigueros*, 395 F.3d 7, 9 (1st Cir. 2005); *see also McGillicuddy,* 746
F.2d at 76 n.1 (holding that it had been an error to allow an appeal from a denial of a
motion to dismiss); *Cummins*, 97 F.Supp. at 69 (the denial of a motion to dismiss is "not
the proper subject for § 1292(b) review"); *Estates of Ungar*, 228 F.Supp.2d at 50 (same).
As the First Circuit has explained,

> This [rule] reflects our policy preference against piecemeal litigation, as
> well as prudential concerns about mootness, ripeness, and lengthy
> appellate proceedings. Thus the fact that appreciable trial time may be
> saved is not determinative, and neither is the fact that the case has
> tremendous implications or might materially advance the ultimate
> termination of the litigation.

*Caraballo-Seda,* 395 F.3d at 9 (internal citations and quotation marks omitted). Indeed,
in *McGillicuddy*, the First Circuit held that it had been a mistake to entertain an
interlocutory appeal of an order denying a motion to dismiss, even in circumstances
where reversal of the order was appropriate. *See* 746 F.2d at 76 n. 1. The First Circuit
suggested that the moving party should instead have been compelled to wait until after
the trial court had entered a final judgment. *See id.; see also Cummins,* 697 F. Supp. at
69 (citing same). Given the First Circuit's clear position on this issue, Defendant's
request for certification under § 1292(b) should be denied.

The Defendants' request should also be denied because the instant action is not
the type of action to which § 1292(b) was meant to apply. Indeed, courts have repeatedly
stressed that § 1292(b) should be used only in exceptional cases, where the issue on

appeal would resolve complex, protracted, and expensive litigation, such as that implicated by antitrust and conspiracy cases. *See Heddendorf*, 263 F.2d at 888; *see also Cummins*, 697 F. Supp. at 68 (citing *Fisons Limited v. United States*, 458 F.2d 1241, 1245 n. 7 (7th Cir. 1972); *Milbert v. Bison Labs.*, 260 F.2d 431, 433 (3rd Cir. 1958)). In order words, such review "should only be granted in rare cases where the saving of costs to the litigants and increase in judicial efficiency is great." *Cummins*, 697 F.Supp. at 68.

    With the exception of the novel disclosure defense raised by the Defendants, the instant action is a garden-variety insider trading action. As such, this action, like other insider trading matters, does not implicate anywhere near the sort of complexity, duration, and expense associated with antitrust and conspiracy matters. Indeed, if anything, the case is far more straightforward than most civil actions, involving fewer factual issues and requiring less discovery. The central allegations are that:

1) P. Rocklage learned negative non-public information about Cubist from her husband, then Cubist's Chairman of the Board and CEO, on December 31, 2001;

2) Although her husband urged her not to do so, P. Rocklage then tipped her brother;

3) After receiving this signal from his sister, Beaver sold all his Cubist stock on January 2, thereby avoiding a loss; and

4) Beaver, in turn, tipped his close friend and neighbor, Jones, to the negative news about Cubist, and thereby induced him to sell all his Cubist stock, which he did on January 3, likewise avoiding a loss.

Given the nature of the case, it should proceed through discovery to trial in quicker fashion and incur less expense than most civil actions (assuming, that is, it is not subjected to an interlocutory appeal). Accordingly, because the instant action does not implicate the complex, protracted, and expensive litigation for which interlocutory

appeals are generally reserved, the Defendants' request for certification should be denied for this reason as well.

The Defendants' request for certification should also be denied because the appeal that Defendants seek would not materially advance the termination of the litigation. Even assuming that an appeal of the denial of the motion to dismiss were successful (which the SEC contends is unlikely), such a result would not resolve the litigation. At best, it is arguable that under the circumstances, the claim against P. Rocklage might be dismissed. However, as the SEC pointed out in its opposition to Defendant's motion to dismiss, even if a court held that P. Rocklage's disclosure negated her securities liability, it would not have negated the liability of Beaver and Jones as tippees. *See* SEC's Opposition to Defendants' Motions to Dismiss, at 18-20. As a result, even if the Defendants were to succeed on an interlocutory appeal, the litigation would proceed, in any event, on the claims against Beaver and Jones and thus, "would likely save neither time nor expense, 'would doubly burden both the appeals court and the litigants, and would unjustifiably forestall the commencement of trial . . . .'" *Cummins,* 697 F. Supp. at 70 (quoting *Bank of New York v. Hoyt*, 108 F.R.D. 184,189 (D.R.I. 1985). Thus, because any appeal of the order would not resolve all claims in the matter, the Defendants' request for certification should be denied for this reason as well. *Cummins,* 697 F. Supp. at 70 ("in a relatively simple multi-count case, certification of an order that does not affect all of the claims is improper.")

## CONCLUSION

Accordingly, for the foregoing reasons, the Defendants' Motion should be denied.

Respectfully submitted,

**UNITED STATES SECURITIES AND
EXCHANGE COMMISSION**

By its attorneys,

Luke T. Cadigan (Mass. Bar No. 561117)
  Senior Trial Counsel
Daniel P. Barry (Mass. Bar No. 564037)
  Senior Counsel
73 Tremont Street, Suite 600
Boston, MA 02108
(617) 573-8919 (Cadigan)
(617) 424-5940 (facsimile)

Dated: September 27, 2005

## Certificate of Service

I certify that on September 27, 2005, I caused a copy of the foregoing to be served upon the following counsel electronically through the ECF system and by first-class mail:

David H. Erichsen, Esq.
Daniel H. Gold, Esq.
Wilmer Cutler Pickering Hale & Dorr LLP
60 State Street
Boston, MA 02109
(617) 526-6950

David E. Marder, Esq.
Benjamin D. Stevenson, Esq.
Robins, Kaplan, Miller & Ciresi, LLP
111 Huntington Ave., Suite 1300
Boston, MA 02199
617-859-2750

Brian E. Whiteley, Esq.
C. Alex Hahn, Esq.
Scibelli, Whiteley and Stanganelli, LLP
50 Federal Street, 5th Floor
Boston, MA 02110
(617) 227-5725

Luke T. Cadigan