UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>    Plaintiff,<br><br>       v.<br><br>PATRICIA B. ROCKLAGE,<br>WILLIAM M. BEAVER, and<br>DAVID G. JONES,<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 05-CV-10074-MEL |

MEMORANDUM AND ORDER

LASKER, D.J.

      Defendants Patricia B. Rocklage, William M. Beaver, and David G. Jones move for reconsideration of the Court's August 23, 2005 Order denying their motion to dismiss the Complaint and, in the alternative, move for certification of the Order for interlocutory appeal pursuant to 28 U.S.C. §1292(b). The motion for reconsideration is DENIED and the motion for certification of the Order for interlocutory appeal is GRANTED.

I. Motion for Reconsideration

      Rocklage earlier moved to dismiss the Complaint on the grounds that: (1) her lack of insider status precluded liability under the classical theory of insider trading; and (2) under United States v. O'Hagan, 521 U.S. 642 (1997), her disclosure to her husband precluded liability under the misappropriation theory

of insider trading. In opposition to the misappropriation theory argument, the SEC submitted that the unique circumstances of the marital relationship distinguish Rocklage's case from O'Hagan.

The Defendants correctly contend that in denying their motion to dismiss, I misread the facts of O'Hagan regarding the relationship between the defendant-lawyer O'Hagan, his law firm, and the shareholders of the company whose stock O'Hagan traded. Contrary to the description in the August 23, 2005 Order, O'Hagan's firm had not contracted to do business with the company whose stock O'Hagan illegally traded. Rather, O'Hagan's firm represented the tender offeror, not the target company whose stock O'Hagan traded. See O'Hagan, 521 U.S. at 647-648.

The Defendants submit that on the basis of this factual misreading, the decision mistakenly reasoned

> that the rationale of O'Hagan is that a defendant's disclosure to his source negates liability ('removes the deceptive device') because it effectively notifies (either directly or indirectly) the shareholders of the company whose securities are traded of any plans to trade on the misappropriated information.

Defendants' Memo at 4. The Defendants maintain that "the hypothetical disclosure by O'Hagan would never have reached the target company's shareholders because O'Hagan represented the bidder, not the target". Id. at 5. As a result, when the O'Hagan Court held that disclosure to the source negated liability, "it could not have had as its unstated rationale any

notion that disclosure would have reached the shareholders and cured any potential for shareholder harm." Id. Accordingly, the Defendants argue that under a proper application of O'Hagan, whether Rocklage's disclosure to her husband would have reached Cubist shareholders is irrelevant; the mere fact of her disclosure to her husband is sufficient to protect against liability under the misappropriation theory.

The SEC responds by acknowledging that O'Hagan's law firm did not represent the company whose stock O'Hagan traded, but instead represented the company that eventually made the tender offer on the company's stock. However, the SEC maintains that this fact is immaterial for two reasons. First,

> as the O'Hagan Court made clear, such a detail did not affect O'Hagan's liability – he would have been held liable regardless of whether his firm worked for the bidder or for the target. See O'Hagan, 521 U.S. at 659("considering the inhibiting impact on market participation of trading on misappropriated information, and the congressional purposes underlying §10(b), it makes scant sense to hold a lawyer like O'Hagan a §10(b) violator if he works for a law firm representing the target of a tender offer, but not if he works for a law firm representing the bidder.").

SEC's Opposition at 6. Second, the SEC argues that

> [e]ven if as the Defendants contend, O'Hagan's disclosure to his firm would not have been tantamount to informing the shareholders, it would have been tantamount to informing the firm and its client, who served as the ultimate source of the information and who had both the opportunity

>  and motivation to take remedial action. See
>  O'Hagan, 521 U.S. at 655 n.6(describing law
>  firm and client as the source of the
>  information); id. at 659 n.9("once a disloyal
>  agent discloses his imminent breach of duty,
>  his principal may seek appropriate equitable
>  relief under state law.").

SEC's Opposition at 6-7.  In marked contrast, here Rocklage's disclosure to her husband was inadequate because he was effectively unable to act upon it or otherwise remedy the breach of duty.  It was not reasonable to expect that Rocklage's disclosure to her spouse would be conveyed to Cubist or its shareholders.  The special nature of the marital relationship distinguishes this case from the agent to principal disclosure in O'Hagan, because the disclosure from wife to husband could not have been expected to prevent the manipulation of the stock market and the deceit of shareholders.

      I agree with the SEC's reasoning.  Because I find no manifest error of law in my prior decision, the Defendants' motion for reconsideration is DENIED.

### II. Motion for Certification

      Certification for appellate review of an interlocutory order pursuant to 28 U.S.C. §1292(b) is to be granted only rarely, when the issue presented for appeal:

> [1] involves a controlling question of law
> [2] as to which there is a substantial ground
> for difference of opinion and [3] that an
> immediate appeal from the order may
> materially advance the ultimate termination
> of the litigation.

28 U.S.C. §1292(b).

The First Circuit has often emphasized that "interlocutory certification under 28 U.S.C. §1292(b) should be used sparingly and only in exceptional circumstances, and where the proposed intermediate appeal presents one or more difficult and pivotal questions of law not settled by controlling authority." McGillicuddy v. Clements, 746 F.2d 76 n.1 (1st Cir. 1984). I am also aware that as a general rule, the First Circuit "do[es] not grant interlocutory appeals from a denial of a motion to dismiss." Caraballo-Seda v. Municipality of Hormigueros, 395 F.3d 7, 9 (1st Cir. 2005). Nevertheless, I find that this case presents exceptional circumstances meriting certification under §1292(b).

First, the order denying the Defendants' motion to dismiss involves a controlling question of law because its reversal would end the litigation. See Klinghoffer v. S.N.C. Achille Lauro, 921 F.2d 21, 24 (2d Cir. 1990)("Although the resolution of an issue need not necessarily terminate an action in order to be 'controlling,' it is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action.")(internal citations omitted). Moreover, motions to dismiss based on the failure to state a claim present quintessential controlling questions of law for the purpose of §1292(b). See 19 James Wm. Moore, Moore's Federal Practice

§203.31[2] (3d ed. 2005)("Controlling questions of law that fall within this category of dispositive issues include the question of whether a claim exists as a matter of law"); see also, e.g., Longwood Manufacturing Corp. v. Wheelabrator Clean Water Systems, Inc., 954 F.Supp. 17, 19 (D. Maine 1997)(granting §1292(b) certification of order denying defendant's motion to dismiss); Lopez v. Bulova Watch Co., 582 F.Supp. 755, 766 (D.R.I. 1984)(same).  Accordingly, the purely legal question of whether Rocklage's disclosure to her husband precludes liability for insider trading under the misappropriation theory is dispositive.

      The SEC opposes this conclusion and argues that even if the order is appealed and reversed, the Court of Appeals' decision would resolve only Rocklage's liability but not the liability of downstream tippees Jones and Beaver.  According to the SEC, Beaver and Jones' liability as tippees derives not from Rocklage's liability but from her breach of duty, which is not cured by disclosure to her husband.  In support of this proposition, the SEC refers to dictum in O'Hagan indicating that although disclosure may negate securities liability in a principal-agent context, the principal may still have a claim against the agent for breach of duty.  See O'Hagan, 521 U.S. at 559 n.9, 655.  I find this argument unpersuasive.  It is well-settled law that a tippee's liability is derivative of and dependant upon the liability of the tipper.  If the tipper is not

liable for insider trading, the tippee cannot be liable either. <u>Dirks v. S.E.C.</u>, 463 U.S. 646, 659 (1983)("the tippee's duty to disclose or abstain [from trading] is derivative of that of the [tipper's] duty"). Accordingly, if the Court of Appeals dismisses the action against Rocklage, the claims against Jones and Beaver for insider trading as tippees would also be dismissed. The First Circuit's resolution of the issues involved would therefore be controlling.

Second, there are substantial grounds for differences of opinion concerning the application of the misappropriation theory in the unique context of a marital relationship. The ruling on the Defendants' motion to dismiss required this Court to decide issues of first impression and therefore clearly concerns "difficult and pivotal questions of law not settled by controlling authority". <u>McGillicuddy</u>, 746 F.2d at 77 n.1. Rational jurists might reasonably differ as to whether <u>O'Hagan</u> precludes liability under the misappropriation theory where the defendant discloses her intent to the source of her inside information, but that source is her spouse. No cases exist in any jurisdiction analyzing whether disclosure to the source negates liability in the marital context.

Third, immediate appeal would materially advance the ultimate termination of this case. As outlined above, reversal on interlocutory appeal would end the entire case and avoid

7

complex, protracted, and expensive litigation.  See Heddendorf v. Goldfine, 263 F.2d 887, 888 (1st Cir. 1959).  This Court has denied a motion to dismiss which raises novel questions, and is accordingly reluctant to embark upon an extended and costly discovery and trial process until assured that its decision on the motion to dismiss is sustained.  All parties will benefit from avoiding the expenditure of resources required to proceed to trial, only to find that the appellate court ultimately disagrees with this Court's ruling.  Such an outcome would impose a tremendous and unnecessary cost in both time and legal expenses.

In sum, I conclude that my Order of August 23, 2005, as modified by the present Order, involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.  Accordingly, the Defendants' motion for certification is GRANTED.  The Order of August 23, 2005 is hereby amended to include the above certification.

The Court has not yet considered the question of whether a stay of proceedings pending appeal is appropriate.

It is so ordered.

Dated:    December 14, 2005
          Boston, Massachusetts      /s/ Morris E. Lasker
                                            U.S.D.J.