UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> PATRICIA B. ROCKLAGE, WILLIAM M. : <br> BEAVER and DAVID G. JONES, : <br> : <br> Defendants. : <br> : | CIVIL ACTION <br> NO. 05-CV-10074-MEL |

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM IN SUPPORT OF MOTION TO APPOINT DISTRIBUTION AGENT**

Plaintiff Securities and Exchange Commission ("Commission") respectfully requests that the Court allow the Commission's Motion to Appoint a Distribution Agent and enter the proposed Order Appointing Distribution Agent submitted herewith, appointing Gilardi & Co., LLC, 3301 Kerner Boulevard, San Rafael, California 94901, as Distribution Agent in this matter to oversee the distribution of settlement monies to injured investors through the establishment of a Fair Fund pursuant to the provisions of Section 308(a) of the Sarbanes-Oxley Act of 2002 [15 U.S.C. § 7246(a)].

**I.    BACKGROUND**

1.    On January 12, 2005, the Commission filed this action. The Commission's Complaint alleged that, on December 31, 2001, Patricia B. Rocklage ("Rocklage") learned from her husband, the then Chairman of the Board and Chief Executive Officer of Cubist Pharmaceuticals, Inc. ("Cubist"), that Cubist had received negative results in clinical trials for one of the company's most important products.  The Complaint further alleged that, shortly thereafter, Rocklage tipped her brother, William M. Beaver ("Beaver"), to sell his stock and thereby induced him to sell all of his Cubist stock, worth approximately $196,000, on the morning of January 2, 2002.  The Complaint further alleged that,

Beaver tipped his close friend and neighbor, David G. Jones ("Jones"), to the negative news about Cubist and thereby induced him to sell all his Cubist stock, worth approximately $262,000, on the morning of January 3. After the market closed on January 16, 2002, Cubist publicly announced the negative clinical trial results. Following the announcement, Cubist's stock price dropped 46%, from a closing price of $31.75 on January 16, to a closing price of $17.02 on January 17. By selling when they did, Beaver and Jones avoided losses of approximately $99,527 and $133,222 respectively.

2. Based on the foregoing conduct, the Commission alleged that Rocklage, Beaver and Jones engaged in fraud in connection with the sale of securities, in violation of Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

3. Each of the Defendants entered into a Consent Order to settle the allegations referred to above. On August 29, 2007, the Court entered a final judgment ("Judgment") against Defendant Rocklage and, on August 30, 2007, the Court entered Judgment against Defendants Beaver and Jones. Pursuant to these Judgments, Rocklage, Beaver and Jones have paid a total of $783,939.00 in disgorgement, prejudgment interest and penalties to the Clerk of this Court. The Clerk has deposited these monies (the "Disgorgement Fund") into the Court Registry Investment System pending further order of this Court.

4. The Disgorgement Fund constitutes a Qualified Settlement Fund ("QSF") under Section 468B(g) of the Internal Revenue Code [26 U.S.C. § 468B(g)] and related regulations [26 C.F.R. §§ 1.468B-1 through 1.468B-5]. On November 7, 2007, the Court appointed Damasco & Associates as Tax Administrator to fulfill the tax obligations of the Disgorgement Fund, including the filing of all tax returns on a timely basis and the timely payment of all taxes.

5. Pursuant to the Fair Funds provision of Section 308(a) of the Sarbanes-Oxley Act

of 2002 [15 U.S.C. § 7246(a)], the amount of any civil penalty the Commission obtains in any judicial action brought by the Commission alleging violations of the securities laws may be added to and become part of any disgorgement fund for the benefit of the victims of such violations. Accordingly, the Commission seeks to distribute all the monies in the Disgorgement Fund to injured market investors, as provided herein.

## II.    APPOINTMENT AND RESPONSIBILITIES OF DISTRIBUTION AGENT

6.    The Commission respectfully requests that the Court appoint Gilardi & Co., LLC, as Distribution Agent in this matter for the purpose of establishing and administering a plan for the distribution of the Disgorgement Fund to injured investors. The Commission selected Gilardi & Co., LLC after a process in which the Commission staff: (a) sought proposals from several suitable candidates; and (b) evaluated the responding candidates and their proposals to select the one that appeared to offer the best prospect of providing the maximum benefit to investors.

### General Provisions Relating to the Distribution Agent

The Commission proposes that the appointment of the Distribution Agent be on the following terms:

7.    The Distribution Agent is not required to post a bond or give an undertaking of any type in connection with its duties and obligations as Distribution Agent.

8.    The Distribution Agent is entitled to rely on all rules of law and court orders, and shall not be liable to anyone for its own good faith compliance with any order, rule, law, judgment, or decree. The Distribution Agent shall not be liable for complying with the orders of this Court. In no event shall the Distribution Agent be liable to any of the Defendants for its good faith compliance with its duties and responsibilities as Distribution Agent, nor shall the Distribution Agent be liable to anyone for any action taken or omitted by it except upon a finding by this Court that the

3

Distribution Agent acted or failed to act as a result of misfeasance, bad faith, gross negligence, or in reckless disregard of its duties.

9.    The Distribution Agent shall be reimbursed from the Disgorgement Fund for all reasonable costs, fees and other expenses incurred in the performance of the Distribution Agent's duties.  The Distribution Agent shall be compensated for services rendered by its Principals at an hourly rate not to exceed $195.00, for services rendered by its Senior Managers at an hourly rate not to exceed $133.00, for services rendered by its Managers at an hourly rate not to exceed $105.00, for services rendered by its Supervisors at an hourly rate not to exceed $86.00, and for services rendered by its staff at an hourly rate not to exceed $67.00.  Absent any extraordinary, unusual or unforeseen events, litigation or other proceedings, the Distribution Agent has agreed that fees for its professional services shall be capped at $7,000.00, fees for its data file review and formatting services shall be capped at $2,000, and fees for its claims processing services shall be capped at $10,000 (excluding reimbursement for third party printing and mailing, postage, software programming and tax compliance expenses).  In order to be compensated from funds in the Disgorgement Fund while those funds remain in the Court Registry, the Distribution Agent shall (a) provide all fee applications (detailing all time and expenses claimed and the nature of the services performed) to Commission counsel for review and approval as to reasonableness at least ten days prior to submission for Court approval; and (b) obtain approval of payment of the fees and expenses from this Court, which shall review such fees and expenses for reasonableness in determining whether such payment will be approved.

10.   The Distribution Agent may be removed at any time by the Court and replaced with a successor.  In the event the Distribution Agent decides to resign, the Distribution Agent shall first give written notice to the Commission and the Court of its intention, and its resignation shall not be effective until the Court has appointed a successor.

**Responsibilities of the Distribution Agent and Procedure for Distribution**

The Commission proposes that the Distribution Agent shall have the following duties and responsibilities:

11.     The Distribution Agent shall oversee the administration of the claims and distribution of monies in the Disgorgement Fund, in consultation with Commission staff, as provided herein.  The Distribution Agent shall review the claims of potential eligible claimants and make determinations as to the eligibility of claimants to recover monies from the Disgorgement Fund and the amount of money to be distributed to each eligible claimant from the Disgorgement Fund.

12.     The Commission staff shall provide the Distribution Agent with copies of trading records gathered during its investigation by which the Distribution Agent will attempt to identify potential eligible claimants.  "Eligible Claimants" shall mean persons or entities who purchased shares of Cubist common stock on either January 2, 2002 (the date on which Defendant Beaver allegedly sold his shares while in possession of material, nonpublic information) or January 3, 2002 (the date on which Defendant Jones allegedly sold his shares while in possession of material, nonpublic information), and who retained ownership of at least some of those shares through to and until the public announcement on January 16, 2002, which caused the aforementioned decline of Cubist's stock price.  In no event shall the Eligible Claimants include any of the Defendants or their heirs or assigns.

13.     Within 90 days of the receipt of these materials, the Distribution Agent will begin to notify potential Eligible Claimants, by first class mail at their last known address, of the claims process and provide, *inter alia*, written instructions for submitting proofs of claim and the deadline for filing such claims.  Absent a last known address, or if the last known address is invalid, the Distribution Agent shall use economical and reasonable efforts to locate potential

Eligible Claimants, such as consulting phone books, national white pages software, computer databases, internet resources, and forwarding address information obtained from the post office. The notification to potential Eligible Claimants shall set forth the number of shares of Cubist common stock that, according to the trading records provided to the Distribution Agent by the Commission staff, the potential Eligible Claimant bought on January 2, 2002 and/or January 3, 2002, the number of shares of Cubist common stock that the potential Eligible Claimant sold on January 2, 2002 and/or January 3, 2002 along with the number of shares of Cubist common stock that the potential Eligible Claimant bought or sold from January 4, 2002 through January 16, 2002, and, utilizing a last in first out calculation methodology, the number of shares of Cubist common stock that the potential Eligible Claimant purchased on January 2, 2002 and/or January 3, 2002 that the potential Eligible Claimant still owned as of the close of the market on January 16, 2002. The notification shall inform the potential Eligible Claimant that, if he agrees with the Distribution Agent's calculation as to the number of shares of Cubist common stock that the potential Eligible Claimant purchased on January 2, 2002 and/or January 3, 2002 that the potential Eligible Claimant still owned as of the close of the market on January 16, 2002, the potential Eligible Claimant should, by the deadline provided, fill out the enclosed proof of claim form attesting to the accuracy of the Distribution Agent's calculations and submit that form to the Distribution Agent in the self-addressed stamped envelope provided. In addition, the notification shall inform the potential Eligible Claimant that, if he disagrees with the Distribution Agent's calculation, the potential Eligible Claimant can dispute it. The notification shall include instructions on how to dispute the Distribution Agent's calculation and the deadline for doing so. The Distribution Agent shall require that any dispute to its calculation shall be in writing and shall be accompanied by such documentary evidence (*e.g.*, trade confirmations and/or brokerage account records) as the Distribution Agent deems necessary. Unless extended by the Court, the period for submitting proof of claim forms attesting to the accuracy of the Distribution Agent's calculation or

written disputes thereof shall be no less than 30 days and no more than 90 days from the date of the first mailing to potential Eligible Claimants.

14.    Within 60 days of the close of the dispute filing period, the Distribution Agent shall provide written notification to all persons who disputed its calculation and whose disputes it has denied ("Denied Disputants"). The Distribution Agent shall advise each such Denied Disputant of the basis for the rejection of the dispute. Any Denied Disputant who objects to the Distribution Agent's determination or who wishes the Distribution Agent to reconsider the denial of the dispute must so advise the Distribution Agent in writing within 30 days after the date of the Distribution Agent's initial denial of the dispute. The Distribution Agent shall promptly consider any such objection or request for reconsideration and shall notify the Denied Disputant in writing of its decision within 30 days of receiving it. The Distribution Agent's determination as to each Denied Disputant's objection or request for reconsideration shall be final.

15.    After completion of the foregoing responsibilities, the Distribution Agent shall prepare a report to be filed with the Court summarizing the Distribution Agent's activities and providing an accounting of the distributions it plans to make ("Distribution Plan"). In determining the amount of money to be distributed to each injured investor, the Distribution agent shall: (a) determine the amount of money available to be distributed; (b) total the number of shares that were purchased on January 2 and January 3 and held through January 16 by those persons who submitted proof of claim forms attesting to the accuracy of the Distribution Agent's calculation or who successfully disputed that calculation ("Eligible Shares"); and (c) divide the amount of money available to be distributed by the number of Eligible Shares to arrive at the amount of money to be distributed per share.[1] The

---

[1] In determining the amount of money to be distributed per share, the Distribution Agent shall not take into account the price at which a share was purchased or whether a share was purchased on January 2, 2002 as opposed to January 3, 2002. Cubist's stock price did not fluctuate substantially on January 2 or January 3 and, while the January 3 closing price for Cubist stock was higher than the January 2 closing price, the high price for the day on January 2 was higher than the high

7

Distribution Agent shall submit the Distribution Plan to Commission staff for review at least 10 days prior to the filing of the Distribution Plan with the Court.  At the same time as the Distribution Plan is filed with the Court for the Court's approval, the Commission also will apply for an Order that directs the Clerk, upon the Court's approval of the Distribution Plan, to release the Disgorgement Fund (including any and all interest accrued thereon) to the Distribution Agent for deposit in a separate escrow account, which the Distribution Agent shall establish and maintain and from which the Distribution Agent shall make distributions to Eligible Claimants.

16.    At the same time as the Distribution Plan is filed with the Court for the Court's approval, the Distribution Agent also may prepare an application to be filed with the Court for an order approving the interim payment to it of all reasonable attorney's fees and expenses incurred in the performance of the Distribution Agent's duties.  Such application may include estimated expenses associated with the payment of the claims.

17.    Following the Court's approval of the Distribution Plan and fee application, and the release of the Disgorgement Fund to the Distribution Agent, the Distribution Agent shall establish a separate escrow account, as provided above, and shall begin to distribute the monies in the Disgorgement Fund, less the costs of administering the fund, to Eligible Claimants.

18.    Unless a longer period is warranted, as determined by the Court, the Distribution Agent will prepare a Notice of Termination to be filed with the Court within 150 days after all distributions have been made.  The Distribution Agent shall submit the Notice of Termination to Commission staff for review prior to the filing thereof with the Court.  To the extent additional funds remain in the Disgorgement Fund at the time of the filing of the Notice of Termination, the

---

price for the day on January 3. Consequently, it cannot be said with certainty that a Cubist stock purchaser would have paid less per share on January 2 than on January 3. Factoring these considerations into the per share distribution determination could significantly increase the cost of the distribution effort and thus reduce the amount of money available for distribution without making the distribution substantially more equitable.

Notice shall include a recommendation, approved by the Commission staff, for the disposition of any such funds.  The Distribution Agent also shall submit an application for a final award of fees and expenses at the same time as the filing of the Notice of Termination.

**WHEREFORE**, for the foregoing reasons, the Commission respectfully requests that the

Court allow the Commission's Motion to Appoint a Distribution Agent and enter the proposed Order Appointing Distribution Agent, submitted herewith.

                                      Respectfully submitted,

                                      **UNITED STATES SECURITIES AND EXCHANGE COMMISSION**

                                      By its attorneys,

                                      _____/s/ Daniel P. Barry_____
                                      Luke T. Cadigan (Mass. Bar No. 561117)
                                        Senior Trial Counsel
                                      Daniel P. Barry (Mass. Bar No. 564037)
                                        Senior Counsel
                                      33 Arch Street, 23rd Floor
                                      Boston, MA 02110
                                      (617) 573-8908 (Barry)
                                      (617) 573-4590 (facsimile)
                                      Email: barryd@sec.gov

Dated: April 10, 2008

## CERTIFICATE OF SERVICE

     I hereby certify that as of April 10, 2008, this action has been resolved as to all other parties and thus no service has been made on them. The foregoing document relates to the distribution of the funds received by the Clerk of the Court as a result of judgments in this matter.

                                      /s/ Daniel P. Barry_____
                                      Daniel P. Barry
                                      Senior Counsel
                                      Securities and Exchange Commission
                                      (617) 573-8908